UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM L. HAGAN, M.D.  PLAINTIFF

v.  CIVIL ACTION NO. 3:15-cv-00298-CRS

NORTHWESTERN MUTUAL LIFE
INSURANCE COMPANY  DEFENDANT

**MEMORANDUM OPINION**

Plaintiff William L. Hagan brought this action seeking payment of long-term disability benefits under his employer's group insurance policy. Hagan only asserted state law claims for breach of contract and violation of the Kentucky Consumer Protection Act, and Kentucky Unfair Claims Settlement Practices Act.

Defendant Northwestern Mutual Life Insurance Company ("Northwestern") moves to dismiss these claims under Fed. R. Civ. P. 12(b)(6) because federal law – the Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001 et seq. ("ERISA") – preempts Hagan's state law claims.

For the reasons below, the Court finds that ERISA preempts Hagan's state law claims. However, Hagan moves unopposed to amend his pleadings to include an ERISA claim. The Court will hold in abeyance Northwestern's motion to dismiss and allow Hagan thirty days to amend his complaint to include an ERISA claim.

## BACKGROUND

Hagan is a part-owner and employee of Bardstown Primary Care, PLLC ("Bardstown Primary Care"). Bardstown Primary Care entered into several group insurance policies with Northwestern. These policies included a Group Long-Term Disability ("LTD") insurance policy. Hagan filed a claim under the LTD policy. Northwestern subsequently denied the claim for LTD benefits. Hagan requested review of the denial and Northwestern again denied his claim. Hagan filed a written appeal of the second denial. Northwestern denied the written appeal.

Hagan filed suit in state court alleging wrongful denial of claims, breach of contract, and bad faith in the claims process under Kentucky law. Northwestern removed the matter to this Court.

## STANDARD

When evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations," "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

## **DISCUSSION**

Northwestern argues that ERISA preempts Hagan's claims and, therefore, the Court should dismiss the claims and strike Hagan's jury demand. Hagan contends that (1) the relevant plan is not an employee welfare benefit plan under ERISA; (2) that ERISA's safe harbor provisions apply if the plan is covered under ERISA; and (3) that, regardless, ERISA does not preempt these particular state law claims. Hagan, unopposed, also requests this Court allow him leave to amend the complaint if the Court finds the policy is an ERISA plan.

1. Whether the Group Insurance Policy is an ERISA Plan

The Sixth Circuit has outlined a three-part test for determining whether an ERISA benefits plan exists:

> First, the court must apply the so-called "safe harbor" regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a "plan" by inquiring whether "from the surrounding circumstances a reasonable person [could] ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits." Finally, the court must ask whether the employer "established or maintained" the plan with the intent of providing benefits to its employees.

*Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434 (6th Cir. 1996) (citations omitted).

i. *Safe Harbor Exemption*

An employee insurance policy is excluded from ERISA coverage – and governed by state law – if all of the following conditions are met: (1) the employer or employee organization makes no contributions to the policy; (2) employee or member participation in the policy is completely voluntary; (3) the employer or employee organization's sole functions, without endorsing the policy, are to permit the insurer to publicize the policy to employees or members,

collect premiums through payroll deductions, and remit them to the insurer; and (4) the employer or employee organization receives no consideration in connection with the policy other than reasonable compensation for actually rendered administrative services in connection with payroll deductions. 29 C.F.R. § 2510.3-1; *see also Helfman v. GE Grp. Life Assur. Co.*, 573 F.3d 383, 388 (6th Cir. 2009).

Here, the safe harbor exemption does not exempt the plan from ERISA coverage. Hagan's employer – Bardstown Primary Care – does make a contribution to the policy because the employer "pays the entire premium" for the insurance coverage. Group Policy 2, ECF No. 1-4; *see also* Pl.'s Resp. 7, ECF No. 15. "[I]f an employer contributes to any employee's payment of premiums, ERISA must apply to the entirety of the particular insurance program." *Helfman*, 573 F.3d 383, 391 (6th Cir. 2009).

ii. *ERISA Plan*

An ERISA plan is defined as a plan, fund, or program that an employer established or maintained for the purpose of providing certain benefits, including disability benefits, to its participants. 29 U.S.C. § 1002(1). If a reasonable person could "ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits," then the Court will find the existence of an ERISA plan. *Thompson*, 95 F.3d at 434.

A review of the LTD shows that the policy satisfies the minimum requirements to establish an ERISA plan. ERISA defines an employer as "any person acting directly as an employer, or indirectly in the interest of an employer," and defines person to include a corporation or partnership. 29 U.S.C. § 1002(5) and (9). The policy identifies Bardstown Primary

Care as the employer. Group Policy 1. The policy also identifies Bardstown Primary Care as the policyowner, which evidences that Bardstown Primary Care established the policy. *Id.*

The policy includes various benefits for eligible "members." *Id.* These benefits include long-term disability insurance coverage. The policy defines members to include owner-employees and other employees. *Id.* While Hagan questions whether an owner-employee qualifies as an ERISA employee, "ERISA's text contains multiple indications that Congress intended working owners to qualify as plan participants." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 12 (2004). In particular, "joint shareholders," which would cover co-owners, are not excluded "from the ERISA definition of 'employee.'" *Santino v. Provident Life & Acc. Ins. Co.*, 276 F.3d 772, 775 (6th Cir. 2001). A plan is excluded by ERISA only if a sole shareholder wholly owns the company and coverage is limited to the sole shareholder and a spouse. *Id.*; *cf. Sweeney v. Unum Life Ins. Co. of Am.*, No. CIV A 3:09CV-514-S (W.D. Ky. Feb. 3, 2010). Thus, where, as here, multiple individuals are owner-employees covered under the policy, the sole shareholder exception does not apply.

For the above stated reasons, the undisputed facts show that the policy is a plan Hagan's employer established for the benefit of employees, including Hagan, and that those benefits include the LTD. The Court finds that the LTD is a plan under ERISA.

2. <u>Whether ERISA Preempts Hagan's State Law Claims</u>

Congress enacted ERISA to "protect … the interests of participants in employee benefit plans and their beneficiaries … by establishing standards of conduct, responsibility, and obligation for fiduciaries" and to "provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. § 1001(b). "The purpose of ERISA is to provide a

5

uniform regulatory regime over employee benefit plans." *Aetna Health Inc. v. Davila,* 542 U.S. 200, 208 (2004). In achieving this uniformity, ERISA includes expansive preemption provisions; *see* 29 U.S.C. 1144; intended to safeguard employee benefit plans as "exclusively a federal concern." *Davila*, 542 U.S. at 208 (internal quotation and citation omitted); *see also Sherfel v. Newson*, 768 F.3d 561, 564 (6th Cir. 2014) ("ERISA is a statute unique in its preemptive effect.").

ERISA is not, as Hagan asserts, merely an affirmative defense that cannot provide the basis for subject-matter jurisdiction. *See* Pl.'s Resp. 4. ERISA "supersede[s] any and all State laws insofar as they may … relate to any [covered] employee benefit plan." 29 U.S.C. §1144(a). "[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Davila*, 542 U.S. at 209. "As long as ERISA exclusively regulates the activity (deciding whether to award benefits), ERISA prevents the distinct state law tort scheme from superimposing an extra layer of regulation on top of the ERISA-regulated plan benefit determination." *Hutchison v. Fifth Third Bancorp.*, 469 F.3d 583, 588 (6th Cir. 2006). If the plan is an ERISA plan, then removal is proper and ERISA "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Davila*, 542 U.S. 200, 209 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)).

State law "relates to" an ERISA plan, and is therefore preempted, "if it has a connection with or reference to such a plan." *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001). State laws have such a connection or reference if, for example, the state laws require certain employee benefit structures; interfere with national plan administration; or create "alternative enforcement

6

mechanisms for the recovery of benefits provided under an ERISA plan." *Sherfel v. Newson*, 768 F.3d 561, 567 (6th Cir. 2014) (internal quotation and citation omitted).

Hagan alleges that Northwestern "wrongfully denied [Hagan's] claims" for "long-term disability benefits" under the LTD. Pl.'s Compl. ¶¶ 7 – 8. According to Hagan's complaint, when Northwestern reviewed and denied Hagan's claims Northwestern (1) "breached its contract" with Hagan; (2) "engaged in unfair, false, misleading and/or deceptive practice" violating the Kentucky Consumer Protection Act; and (3) "committed bad faith against [Hagan]" violating the Kentucky Unfair Claims Settlement Practices Act. *Id.* ¶¶ 9 – 11. These claims arise from Northwestern's alleged obligations to pay ERISA plan benefits and review ERISA plan claims for benefits. Deciding these claims would require interpretation of the LDP and an analysis of Northwestern's administration of Hagan's disability claim. The claims attempt to bypass ERISA and use state law as an alternative to recover ERISA plan benefits. As such, ERISA preempts Hagan's state law claims and Northwestern properly removed the matter from state court.

3. Strike Request for Jury Trial

Northwestern also moves to strike Hagan's jury demand as there is no right to a jury trial under ERISA. Hagan does not oppose this motion. "[T]he Seventh Amendment does not guarantee a jury trial in ERISA … cases." *Reese v. CNH Am. LLC*, 574 F.3d 315, 327 (6th Cir. 2009); *see also Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 616 (6th Cir. 1998). The Court will strike Hagan's demand for a jury trial.

4. Leave to Amend

Hagan requests this Court allow him leave to amend his claims to include an ERISA claim. Northwestern does not oppose this request. The Court will hold in abeyance

Northwestern's motion to dismiss and allow Hagan thirty days to amend his pleadings to include an ERISA claim.

The Court will enter a separate order in accordance with this opinion.

February 3, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**